CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
DEC 09 2021
JULIA C. DUDLEY, CLERK
BY: s/ H. MCDONALD
      DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| MARVA TOTTEN, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 4:21cv00011 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| WALMART, INC., and ) | By:   Hon. Thomas T. Cullen |
| WALMART SUPERCENTER ) | United States District Judge |
| a/k/a WALMART STORES EAST, LP, ) | |
| ) | |
| Defendants. ) | |

Plaintiff Marva Totten sued Walmart, Inc., and Walmart Stores East, LP (collectively "Walmart" or "Defendants"), claiming that she tripped on a garden hose near the entrance to the garden center of Defendants' store in Danville, Virginia. Defendants moved for summary judgment arguing, among other things, that Totten has not produced sufficient evidence that she, in fact, tripped on a garden hose, and that even if she did, Totten has failed to establish that Walmart had adequate notice or failed to warn her of this hazard. The court disagrees and, for the reasons explained below, finds that Totten has established genuine issues of material fact as to Walmart's liability. Accordingly, the court will deny the motion for summary judgment.

I.   **BACKGROUND**

The following facts are either undisputed or presented in the light most favorable to Totten, the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Henry v. Purnell*, 652 F.3d 524, 527 (4th Cir. 2011) (*en banc*). These operative facts are primarily

established through Totten's deposition testimony; the declaration of an eyewitness, Clara Cobbs; and surveillance video of the incident.[1]

On the morning of September 20, 2019, Totten, who is in her early 80s, drove herself to the Danville Walmart to shop and "look at some flowers." (Dep. of Marva Totten 24:5, Aug. 31, 2021 [ECF No. 17-1].) After arriving, Totten walked to the garden center, a separate, enclosed section of the store containing live plants, gardening equipment, and various outdoor wares. Totten entered the garden center through its sliding glass doors.

After spending 10 to 15 minutes browsing the garden center, Totten made her way back to the entrance area. As she approached, Totten was stopped by another customer, later identified as Clara Cobbs, who asked her a question about flower vases. Totten couldn't answer Cobbs's question, so she pointed her to a Walmart employee who was standing nearby. This Walmart employee approached to assist Cobbs with the vases and Totten turned to exit through the nearby doorway. As she began to walk away, she fell to the floor. As Totten described it at her deposition:

> [T]hey were still talking, and when I turned, turned to leave to go inside, that is when I could feel myself falling, and I just throwed my hands out like that and I went on down. My feet hit and I throwed my hand out like that and I went like that (indicating), because if I hadn't, my whole face would have hit the cement and my whole forehead would have been busted.

(*Id.* at 30:24–31:7.) In response to defense counsel's question about what had caused her to fall, Totten further testified that her "feet hit something," but that she didn't know what it

---

[1] Surveillance video of the incident was filed with Walmart's reply brief (and at the court's request) at ECF No. 24. The video will be cited herein by reference to the on-screen time in the video in the format: Video at hh:mm:ss.

was. (*Id.* at 40:20–22.) Defense counsel pressed the point, again asking Totten if she had seen—or could recall seeing—anything on the floor that might have caused her to fall. Totten responded: "I'm going to tell you, I really don't know. . . . It's been a good while back." (*Id.* at 41:11–14.) Totten added that she had "felt something on [her] feet," but conceded, "I don't know what it was." [2] (*Id.* at 46:7–10.) Totten denied seeing any warning cones, either before or after her fall. (*Id.* at 47:25–48:3.)

Clara Cobbs—the customer who had asked Totten about the vases—didn't see her fall because she was talking to the Walmart employee as Totten walked away, but she did witness the immediate aftermath. According to Cobbs, while Totten was being attended to by various Walmart employees, a "supervisor/employee asked another employee to get a pillow for Ms. Totten and told other employees to move that hose." (Aff. of Clara Cobbs ¶ 6, Nov. 17, 2021 [ECF No. 19-2].) Cobbs further stated that an employee brought the pillow and "some other employees rolled the hose up on a hose reel that was up on a pole nearby." (*Id.*)

The surveillance video, which was obtained from a camera positioned at the opposite end of the garden shop, shows (albeit from some distance away) the key events described by Totten and Cobbs, including Totten's fall and the events that followed. From the beginning

---

[2] In her opposition brief, Totten points out that various Walmart employees indicated in their post-accident Associate Witness Statements that Totten had remarked, following her fall, that she had tripped on a garden hose. Walmart contends that Totten's out-of-court statements to these employees, as memorialized in Walmart's records, constitute inadmissible hearsay and should not be considered at summary judgment (or otherwise). At this stage, the court is not convinced. Although not addressed by either party, the court notes that these statements, which Totten apparently made to these employees immediately after her fall while waiting for an ambulance to arrive, *may* constitute present sense impressions and/or excited utterances, and therefore could be admissible under Federal Rules of Evidence 803(1) or (2). But the court need not resolve this evidentiary issue at this stage. For purposes of summary judgment, the court will only consider Totten's deposition testimony—that her feet hit something, but that she doesn't know what it was—Cobbs's affidavit, and the surveillance video.

of the video at 8:49 a.m. until 10:08 a.m.—or about six minutes before Totten's fall—an orange (or yellow) caution cone is visible on the floor near the entrance to the garden center. Around 10:08, a Walmart employee, wearing a yellow vest and a nametag, can be seen speaking to a customer and pointing towards a nearby aisle. At 10:08:17, that employee pushes what appears to be a hose reel cart out of the way of the aisle it is blocking, allowing the customer to access that aisle. In so doing, the employee positions the cart either up against or on top of the cone, obstructing it from the camera's (and possibly the customers') view.

Five minutes later, Totten, wearing a blue jacket, can be seen speaking to someone (presumably Cobbs) near that hose cart, before turning and advancing towards the door. (Video at 10:13:50.) As she does, Totten falls to the floor (and out of the camera's view). (*Id.* at 10:14:22.) Given the vantage point of the camera and the numerous obstructions between it and Totten, the video does not capture Totten's lower extremities or the floor itself at the time of the fall. In other words, the video doesn't show the cause of her fall—be it a hose or something else.

But the video is telling in other respects. Following Totten's fall, the video shows several Walmart employees coming to her aid. Beginning at 10:18:48, two Walmart employees remove what appears to be a garden hose from the floor next to where Totten is lying. Specifically, the video depicts one employee lifting a hose off the floor, while another employee standing beside a nearby pole turns a handle attached to the pole. Once the employee stops cranking the handle, the other employee turns back to the hose reel cart and pushes it out of sight. After the cart is removed, the cone is visible again, but it is lying on its

side. The employee who had moved the hose cart returns to the frame and stands the cone upright. (*Id.* at 10:19:49.)

Plaintiff originally filed suit against Walmart in state court, alleging a single count of negligence. (*See* Compl. [ECF No. 1-1].) Walmart removed the case to this court on February 17, 2021. (Not. of Removal, Feb. 17, 2021 [ECF No. 1].) Following discovery, Walmart filed the present motion for summary judgment. [ECF No. 16.] The matter was fully briefed by the parties, and the court heard oral argument on the motion on December 6, 2021. After reviewing the arguments of the parties, the evidence in the record, and the applicable law, the matter is ripe for disposition.

## II.  SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(a), the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Glynn v. EDO Corp.*, 710 F.3d 209, 213 (4th Cir. 2013). When making this determination, the court should consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . [any] affidavits" filed by the parties. *Celotex*, 477 U.S. at 322. Whether a fact is material depends on the relevant substantive law. *Anderson*, 477 U.S. at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* (citation omitted). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party carries its burden, the nonmoving party must then come forward and

establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

In determining whether a genuine issue of material fact exists, the court views the facts and draws all reasonable inferences in the light most favorable to the nonmoving party. *Glynn*, 710 F.3d at 213 (citing *Bonds v. Leavitt*, 629 F.3d 369, 380 (4th Cir. 2011)). Indeed, "[i]t is an 'axiom that in ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *McAirlaids, Inc. v. Kimberly-Clark Corp.*, 756 F.3d 307, 310 (4th Cir. 2014) (internal alteration omitted) (quoting *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (per curiam)). Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255. But the nonmoving party must "set forth specific facts that go beyond the 'mere existence of a scintilla of evidence.'" *Glynn*, 710 F.3d at 213 (quoting *Anderson*, 477 U.S. at 252). The nonmoving party must show that "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "In other words, to grant summary judgment the [c]ourt must determine that no reasonable jury could find for the nonmoving party on the evidence before it." *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990) (citing *Anderson*, 477 U.S. at 248). Even when facts are not in dispute, the court cannot grant summary judgment unless there is "no genuine issue as to the inferences to be drawn from" those facts. *World-Wide Rights Ltd. P'ship v. Combe, Inc.*, 955 F.2d 242, 244 (4th Cir. 1992).

Even though summary judgment may be an appropriate tool to eliminate trial in some cases, it "must be used carefully so as not . . . to foreclose trial on genuinely disputed facts."

*Thompson Everett, Inc. v. National Cable Adv., LP*, 57 F.3d 1317, 1322–23 (4th Cir. 1995). "The question at the summary judgment stage is not whether a jury is sure to find a verdict for the plaintiff; the question is whether a reasonable jury could rationally so find." *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 334 (4th Cir. 2011) (emphasis in original).

### III. DISCUSSION

Virginia law controls this diversity action. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78–79 (1938). In Virginia, a store owner owes its customers a duty to exercise ordinary care in maintaining its premises. *Winn-Dixie Stores, Inc., v. Parker*, 396 S.E.2d 649, 650 (Va. 1990). But store owners are not guarantors of their customers' safety, and there is no duty to warn those customers of dangers that are "open and obvious to a person exercising reasonable care for [her] own safety." *Gottlieb v. Andrus*, 104 S.E.2d 743, 746 (Va. 1958).

To establish a *prima facie* case of negligence, a plaintiff must establish "the existence of a legal duty, a breach of that duty, and proximate causation resulting in damage." *Atrium Unit Owners Ass'n v. King*, 585 S.E.2d 545, 548 (Va. 2003). This duty requires the owner of the premises

> to have the premises in a reasonably safe condition for [a customer's] visit; to remove, within a reasonable time, foreign objects from its floors which it may have placed there or which it knew, or should have known, that other persons had placed there; to warn [a customer] of the unsafe condition if it was unknown to [her], but was, or should have been, known to the [owner].

*Colonial Stores Inc. v. Pulley*, 125 S.E.2d 188, 190 (Va. 1962). In other words, this legal duty to either remove the danger or warn of its existence is only triggered if the defendant has notice of an unsafe condition that is not open and obvious to anyone exercising due care for their

own safety. *See, e.g.*, *Fobbs v. Webb Bldg. Ltd. P'ship*, 349 S.E.2d 355, 357 (Va. 1986) (noting an owner's duty to maintain the premises in a reasonably safe condition, "except that the owner has no duty to warn its invitee of an unsafe condition which is open and obvious to a reasonable person exercising ordinary care for [her] own safety").

The extent of the notice required in a premises-liability case depends on the specific circumstances of the case, mainly whether the unsafe condition was created by the defendant (through its employees) or by a third party (usually another customer). "Where a premises owner's affirmative conduct is alleged to be the cause of an unsafe condition, Virginia courts impute notice to the defendant if the danger was reasonably foreseeable." *Harrison v. Kroger Co.*, 737 F. Supp. 2d 554, 557 (W.D. Va. July 22, 2010) (citing *Memco Stores, Inc. v. Yeatman*, 348 S.E.2d 228, 231 (Va. 1986)). In *Yeatman*, a customer of a retail store sued after slipping on a rotten leaf that had fallen from a live plant stationed near a furniture display. Because a store employee had relocated the plant from an outdoor patio to the furniture display, the court held that the defendant could be charged with constructive notice, even though there was no evidence that the employee knew the leaf had fallen into the aisle, and the plaintiff had not established how long it had been there. *Yeatman*, 348 S.E.2d at 231. As the court concluded, "If an ordinarily prudent person, given the facts and circumstances Memco knew or should have known, could have foreseen the risk of danger resulting from such circumstances, Memco had a duty to exercise reasonable care to avoid the genesis of the danger." *Id.*

But a plaintiff has a higher burden when the defendant's conduct was merely "passive." *Ashby v. Faison & Assoc., Inc.*, 440 S.E.2d 603, 605 (Va. 1994).

> In *Ashby*, the court characterized as "passive conduct" defendant's failure to remove or warn the plaintiff of water

- 8 -

> tracked into the lobby of an office building by a third party on a rainy day. The *Ashby* court distinguished the facts from the situation in *Yeatman*, in which the hazardous condition on the floor resulted from the defendant's affirmative conduct of moving a plant from the patio to the furniture display.

*Harrison*, 737 F. Supp. 2d at 557 (citing *Ashby*, 440 S.E.2d at 605) (internal citations omitted). Thus, where there is no indication that the dangerous condition was created by the affirmative act of the defendant's employees, a plaintiff must prove that the defendant had "actual or constructive notice, that is, whether they knew or should have known, of the presence of the [hazardous condition] that caused [plaintiff's] fall and failed to remove it within a reasonable time or to warn of its presence." *Ashby*, 440 S.E.2d at 605; *see also Turley v. Costco Wholesale Corp.*, 220 F. App'x 179, 181 (4th Cir. 2007) ("When, as here, the dangerous condition resulted from passive conduct, the plaintiff may prevail only if he shows that defendants had actual or constructive notice of the dangerous condition.") (cleaned up); *Layne v. Wal-Mart Stores E., L.P.*, No. 4:06-cv-00025, 2007 WL 128320, at * 3 (W.D. Va. Jan. 11, 2007) ("[Plaintiff's] argument assumes that another shopper placed the loose iron on top of the box she removed. Such a hazard was not created by the affirmative conduct of Wal-Mart, and as a result *Yeatman's* foreseeability test is not applicable to this case.").

A plaintiff establishes actual notice when she establishes that the store owner was actually aware of the dangerous condition. *See Eure v. Kroger Ltd. P'ship I*, No. 7:11-cv-00190, 2012 WL 896347, at *5 (W.D. Va. Mar. 15, 2012). A plaintiff typically can establish constructive notice on the part of the store owner by pointing to "evidence that the defect was noticeable and had existed for a sufficient length of time to charge its possessor with

notice of its defective condition." *Grim v. Rahe, Inc.*, 434 S.E.2d 888, 890 (Va. 1993) (citing *Pulley*, 125 S.E.2d at 190.)

But this does not end the inquiry. "Even in cases of defects which are not open and obvious, a property owner discharges its duty if it adequately warns its customers of the unsafe condition." *Loomis v. Kroger Ltd. P'ship I*, No. 2:14CV536, 2015 WL 3793751, at *4 (E.D. Va. June 17, 2015). Stated differently, "merely showing that a business owner had actual or constructive notice of a hazardous condition is not sufficient to demonstrate liability. Instead, the plaintiff must demonstrate that the defendant acted unreasonably in response to the hazardous condition of which it had notice." *Eure,* 2012 WL 869347, at *6.

In this case, Walmart argues that it is entitled to summary judgment because Totten has not produced sufficient evidence creating genuine issues of material fact as to the following elements of her *prima facie* case: 1) that a dangerous condition existed; 2) that a dangerous condition was the proximate cause of her fall; 3) that Walmart had actual or constructive notice of the dangerous condition; and 4) that Walmart failed to remedy it or provide an adequate warning. The court will address these arguments in turn.

**A.  Existence of a Dangerous Condition and Proximate Cause of the Fall**

Walmart seizes upon Totten's deposition testimony that she never saw a garden hose and does not know what caused her to fall, arguing that this is fatal to her case. The court agrees that Totten's testimony, by itself, is insufficient to satisfy her burden of establishing that a hazardous condition existed, and that this hazardous condition was the proximate cause of her fall. But other evidence in the record, considered in conjunction with Totten's deposition testimony that her foot hit something, supports a reasonable inference that there was an

unattended garden hose near Totten's feet and that this hose was the proximate cause of her fall. Clara Cobbs, who was standing near Totten when she fell and remained at the scene following her fall, attested that after the incident, a Walmart manager directed other employees "to move that hose." (Cobbs Decl. ¶ 6.) The surveillance video corroborates this account. As noted above, beginning at 10:18:48, the video shows two Walmart employees winding up and removing a garden hose from an area within a few feet of where Totten had fallen just five minutes earlier. A reasonable jury could conclude from this evidence that a dangerous condition existed, and that that condition was the proximate cause of Totten's fall and injuries.

### B.  Notice of Hazardous Condition

Walmart next argues that Totten has failed to adduce sufficient evidence establishing that it had actual or constructive knowledge of the garden hose's presence before her fall. In making this argument, Walmart assumes that Totten must be held to the standard articulated in *Ashby*—that Walmart had actual or constructive knowledge that a hose was lying in the aisle. This assumption is invalid because there is ample evidence from which to infer that an affirmative act by a Walmart employee caused the garden hose to be left on the floor in the first place. Based on this affirmative act, Totten need only prove the lower standard articulated in *Yeatman*—that Walmart should have foreseen that leaving a hose in the aisle presented a safety hazard to its customers.

Cobbs's affidavit and the video evidence reveal that, shortly after the accident, two Walmart employees removed a garden hose from the floor by, in part, turning a crank attached to a nearby pole. This indicates that the hose wasn't merchandise for sale, but store equipment. And given that, it is highly unlikely that a customer or other third party was responsible for

- 11 -

placing the hose on the floor in the first instance. Indeed, the most reasonable and logical explanation is that sometime prior to Totten's fall, an employee had utilized this hose to water plants in the garden center (or for some other purpose) but, for whatever reason, failed to remove it from the aisle. Accordingly, a reasonable jury could conclude that Walmart should have foreseen that leaving a hose on the floor would present a tripping hazard to customers using the aisle, such that it violated its duty to keep its store in a reasonably safe condition. *See Yeatman*, 348 S.E.2d at 231.

### C. Adequacy of the Warning

Without conceding that that it had actual or constructive notice of the garden hose, Walmart contends that the presence of the warning cone in the exact area where Totten fell is sufficient to satisfy its duty to warn of that hazard. It is well-established that placing warning cones in the immediate vicinity of a known hazard is generally sufficient to satisfy the duty to provide adequate warning of a dangerous condition. *See Turner v. Wal-Mart Stores E., LP, et al.*, No. 4:20-cv-00041, 2021 WL 1783256, at *5 (W.D. Va. May 5, 2021) (holding that defendant's positioning of orange warning cone within inches of alleged nail polish spill provided adequate warning and militated a finding of summary judgment in the defendant's favor); *Loomis*, 2015 WL 3793751, at *4 (holding that placement of warning cone "within feet of the hazard which allegedly caused her fall" constituted an adequate warning).

Although a warning cone was present in the immediate vicinity of Totten's fall preceding her fall, there is a genuine issue of material fact as to whether that cone was visible to Totten—or to anyone else—*at the time of her fall*. As explained above, the video evidence reveals that approximately five minutes before Totten approached, a Walmart employee

moved the hose reel cart to enable another customer to access an aisle. In so doing, the employee pushed that cart either up against, or on top of, the warning cone, such that it was no longer visible on camera. The fact that the cone is lying on its side when the cart is rolled away at 10:18:48 further indicates that the cart, when it was initially moved at 10:08:17, came to rest on top of, or up against, the cone. Moreover, Totten testified that she did not see any caution or warning cones in that area—either immediately prior to or after her fall. (Totten Dep. at 47:19–48:3.) Based on this evidence, a reasonable jury could conclude that Walmart's purported warning was inadequate to discharge its duty under the law. *See Kalopodes v. Fed. Rsrv. Bank of Richmond*, 367 F.2d 47, 50 (1966) ("'[A]n insufficient warning has the same legal consequences as no warning at all.'").

In sum, Totten has presented sufficient evidence to create genuine issues of material fact as to every element of her *prima facie* case of negligence, and summary judgment is not warranted.

### D. Open and Obvious Condition

At oral argument, Walmart posited that, if there was a garden hose on the ground, that condition was open and obvious such that it had no duty to warn Totten or anyone else of the danger it presented. It follows, then, that if Totten tripped on an open and obvious hazard, she would be contributorily negligent for her fall, and thus barred from recovery. *See Estep v. Xanterra Kingsmill, LLC*, 238 F. Supp. 3d 791, 795 (E.D. Va. 2017) ("If a person trips over an 'open and obvious condition or defect' she is 'guilty of contributory negligence as a matter of law,' unless there is a legally valid justification for failing to observe the defect." (quoting *Scott v. City of Lynchburg*, 399 S.E.2d 809, 810 (Va. 1991))); *Russel v. Wright*, 916 F. Supp. 2d 629, 658

(W.D. Va. 2013) ("[A] plaintiff's negligence claim is barred by [her] contributory negligence if [she] failed to act as a reasonable person would have acted for his own safety under the circumstances." (citing *Rascher v. Friend*, 689 S.E.2d 661, 664 (Va. 2010)). To be sure, there is evidence that supports this argument. In the video, when Totten moves towards Cobbs—presumably to discuss the vases—it appears that she places her hand on the handle of the hose reel cart and then deliberately steps over something on the floor. (Video at 10:13:43.) But Walmart's argument is ultimately unavailing for two reasons.

First, the issue was not raised in Walmart's opening brief, and thus it is not proper to consider without giving Totten the benefit of notice and an opportunity to make a counterargument. *See, e.g., Clawson v. FedEx Ground Package Sys., Inc.*, 451 F. Supp. 2d 731, 735 (D. Md. 2006) ("The concern that the ordinary rule addresses is 'that an opposing party would be prejudiced by an advocate arguing an issue without an opportunity for the opponent to respond.'" (quoting *United States v. Head*, 340 F.3d 628, 630 n.4 (8th Cir. 2003))). Second, and more importantly, "whether a plaintiff is guilty of contributory negligence is [ordinarily] a jury issue"; it becomes a question of law for the court to decide "only when reasonable minds could not differ about the conclusion." *Medlar v. Mohan*, 409 S.E.2d 123, 126 (Va. 1991); *see Estep*, 238 F. Supp. 3d at 796.

Here, taking the evidence in the light most favorable to Totten, the court is not prepared to say that "but one conclusion could be reached" on the evidence in the record. *Acme Markets v. Remschel*, 24 S.E.2d 430, 433 (Va. 1943). A reasonable jury could conclude that the hose was an open and obvious hazard such that Totten was charged with notice of its presence in the exercise of due care for her own safety. But it might also reasonably conclude

that it was not open and obvious and that Walmart was therefore charged with a duty to warn about or remove the danger. In short, the issue is not so one-sided that it can be decided as a matter of law. Whether Totten was contributorily negligent—and whether that negligence was a proximate cause of her fall—are questions that must be submitted to a jury.

### IV. CONCLUSION

For these reasons, the court will deny Walmart's motion for summary judgment.

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to all counsel of record.

**ENTERED** this 9th day of December, 2021.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE